IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MAESTRO INTEGRATIONS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:25-CV-35-RP |
| AMERICAN FIRE WIRE, INC., | § § § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant American Fire Wire, Inc.'s ("AFW") Motion to Transfer or, Alternatively, to Stay, (Dkt. 13), and Defendant AFW's Motion to Abate or Stay Deadlines, (Dkt. 21). Plaintiff Maestro Integrations, LLC ("Maestro") filed a response in opposition to the motion to transfer, (Dkt. 14), and AFW filed a reply, (Dkt. 16). AFW also filed a supplement to the motion to transfer, (Dkt. 18), Maestro filed a response to the supplement, (Dkt. 19), and AFW replied in support of its supplement, (Dkt. 20). As to AFW's motion to abate, Maestro filed a response in opposition, (Dkt. 23). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion to transfer should be denied. The Court will also deny the motion to abate as moot.

## I. BACKGROUND

AFW is a Nevada corporation that sells specialized, proprietary coaxial cables that can withstand building-fire temperatures. AFW's cables are used in Distributed Antena Systems ("DAS") to contact emergency services in the event of a fire. (Mot. to Transfer, Dkt. 13, at 3). Maestro is a Texas design-build firm that provides clients with integrated commercial technology services. One of Maestro's services is designing and installing DAS solutions for businesses. AFW

1

sells fire-resistant coaxial cables for large projects like those completed by Maestro. (Resp., Dkt. 14, at 2).

Maestro and AFW were "in a long-term business relationship in which Maestro used AFW as its distributor to supply Maestro with a host of DAS materials and tools for its projects." (Mot. To Transfer, Dkt. 13, at 3). The two companies also entered into a contract wherein AFW agreed to train Maestro's employees and provide various project management services; in exchange, they entered into a profit-sharing agreement. (*Id.*). AFW alleges that by October 29, 2024, AFW had provided Maestro with over $225,000 in labor and services for which Maestro had not paid. (*Id.* at 3). According to AFW, the parties "were unable to reach a long-term agreement to continue their business relationship resulting in a dispute as to the monies each party owed the other." (*Id.* at 3–4).

On November 14, 2024, AFW filed suit against Maestro in the District of Nevada for breach of contract. (*Id.* at 1, 4). AFW represents that its Nevada Complaint alleges that AFW and Maestro "had a multi-year profit-sharing business agreement and that Maestro breached its contract with AFW by failing to pay for services provided by AFW." (*Id.* at 1). AFW also represents that the Nevada case "implicates the totality of the parties' business relationship and resulting obligations to each other" and that the two cases substantially overlap, such that the Fifth Circuit's first-to-file rule applies and that this case should be transferred to Nevada for consolidation.[1] (*Id.* at 1–2, 5–9). AFW argues that there is substantial overlap because the parties are identical, both cases involve breach of contract claims concerning alleged outstanding payment obligations, and the same evidence (e.g., contracts, accounting ledgers) may be relevant to both cases. (*Id.* at 6). It also points to a substantial likelihood of conflicting rulings from the two courts. (*Id.* at 6–7).

---

[1] AFW had argued in the alternative that, if this case is not transferred, it should be stayed. (Mot. to Transfer, Dkt. 13, at 8). Its rationale was that there was a pending motion challenging the District of Nevada's jurisdiction in the Nevada case. (*Id.*). AFW later represented in its Supplement that Maestro withdrew the motion to dismiss for lack of personal jurisdiction in the Nevada case and informed the Court that its alternative request for a temporary stay is moot. (AFW Supp., Dkt. 18, at 1–2).

2

Maestro argues in response that the first-to-file rule does not apply, contending that the instant case and the Nevada case "arise from entirely separate transactions." (Resp., Dkt. 14, at 1). This lawsuit involves AFW's alleged breach of a Promissory Note executed in favor of Maestro, which memorialized a $215,000 loan[2] that AFW's President, Will Rogers, purportedly solicited on behalf of AFW to finance the purchase of a "Porsche high-performance vehicle." (*Id.*; Orig. Pet., Dkt. 1-1, at 4). According to Maestro, Rogers told the Managing Principal of Maestro that he was "working an 'arbitrage' deal for a Porsche GT3 from Florida and needed the money for a quick sale." (Resp., Dkt. 14, at 3). Rogers stated that he would pay the money back in approximately ten days, but this did not happen.[3] (*Id.;* Cerda Decl., Dkt. 14-1, at 4–5). Maestro represents that AFW has never made a single payment on the Note and that AFW is in default. (Resp., Dkt. 14, at 1; Orig. Pet., Dkt. 1-1, at 4). On November 4, 2024, Maestro's counsel served a formal Notice of Default and Demand Letter to Defendants, which gave Defendants ten days to cure the default. (Orig. Pet., Dkt. 1-1, at 4–5; Notice of Default and Demand Letter, Dkt. 14-2, at 7). AFW did not answer that demand letter but filed the Nevada lawsuit ten days later on November 14, 2024. (Resp., Dkt. 14, at 4).

Maestro argues that the Promissory Note "had nothing to do with the services purportedly provided by Rogers." (Resp., Dkt. 14, at 3). It asserts that none of the relevant witnesses pertaining to the Promissory Note or the Porsche reside in Nevada; that AFW's Complaint in the Nevada lawsuit does not mention the Promissory Note; that discovery in the two cases "would not be 'identical'"; and that there is no risk of conflicting rulings from the two courts. (*Id.* at 7–8, 10). Finally, Maestro also contends that, even if there is "some overlap" between these two cases, the

---

[2] More specifically, AFW agreed to repay Maestro the principal sum of $215,000, plus an additional interest fee of $10,000. (Resp., Dkt. 14, at 3; Promissory Note, Dkt. 14-1, at 11).
[3] Maestro's Managing Principal swore in a declaration that Rogers gave him various justifications for why he had not paid back the loan, until September 2024, when Rogers "went dark." (Resp., Dkt. 14, at 3–4; Cerda Decl., Dkt. 14-1, at 4).

3

Nevada case was filed "in bad faith as an anticipatory suit," meaning the first-to-file rule should not apply. (Resp., Dkt. 14, at 1–2).

In reply, AFW argues that the "core issue central to both the Texas and Nevada actions is the same: how much money is owed by each party to the other." (Reply, Dkt. 16, at 1). AFW asserts that "[a]ny factual or legal findings regarding the existence and terms of the profit-sharing agreement in the Nevada action will necessarily impact AFW's defense in the Texas action, and vice versa." (*Id.* at 4). It also argues that the evidence supporting AFW's claims "will be the exact same in both actions." (*Id.* at 1) Additionally, AFW contends that, though Rogers "did discuss his plans to purchase a high-performance vehicle, such evidence is irrelevant to either parties' claims or defenses in the Texas action. The loan was made to AFW, not Rogers personally, and the promissory note makes no mention of any vehicle." (*Id.* at 3).

Finally, AFW claims in its Reply that its filing of the Nevada case was not an "anticipatory lawsuit." It states that Maestro's demand letter sent on November 4, 2024, was not "out of the blue"; rather, it states that the demand letter was sent one week after AFW notified Maestro that it decided to discontinue their business partnership and demanded Maestro to cease using any of AFW's proprietary intellectual property and designs. (*Id.* at 3). It asserts that Rogers and Maestro's Managing Principal discussed the alleged remaining payments from the profit-sharing agreement and the outstanding Promissory Note in conjunction with one another. (*Id.* at 5). It argues that "[b]y issuing its demand letter, Maestro left AFW with little choice other than litigation to recoup the money it was owed." (*Id.* at 4–5).

## II. LEGAL STANDARD

"Courts in the Fifth Circuit generally follow a 'first-filed rule' in deciding which Court should maintain jurisdiction over claims that arise out of the same subject matter but are pressed in different suits." *Igloo Prods. Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D. Tex. 1990).

4

"Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). In determining whether there is substantial overlap, the Fifth Circuit "has looked at factors such as whether 'the core issue . . . was the same' or if 'much of the proof adduced . . . would likely be identical.'" *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011) (first quoting *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985); and then *quoting Mann Mfg., Inc. v. Hortex Inc.*, 439 F.2d 403, 407 (5th Cir.1971)). When "overlap between two suits is less than complete," the Fifth Circuit has also approved of courts looking to "such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Int'l Fid. Ins. Co.*, 665 F.3d at 678 (quoting *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir.1997)). The rule is "grounded in principles of comity" under which federal courts have recognized "courts of coordinate jurisdiction and equal rank [should] exercise care to avoid interference with each others' affairs." *Save Power Ltd.*, 121 F.3d at 950 (quoting *W. Gulf Mar. Ass'n*, 751 F.2d at 728). The three primary concerns of the first-filed rule are: (1) to "avoid the waste of duplication;" (2) to "avoid rulings which may trench upon the authority of sister courts;" and (3) to "avoid piecemeal resolution of issues that call for a uniform result." *Id.* (quoting *W. Gulf Mar. Ass'n*, 751 F.2d at 729).

Application of the first-filed rule is discretionary. *Cadle*, 174 F.3d at 603 (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)). In determining whether to dismiss an action, the court must examine: (1) whether the two pending actions are so duplicative or involve substantially similar issues that one court should decide the issues; and (2) which of the two courts should resolve the case. *Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). However, "[o]nce the likelihood of substantial overlap between the two suits has been demonstrated, it is no

5

longer up to the second-filed court to resolve the question of whether both should be allowed to proceed." *Cadle*, 174 F.3d at 605-06. Instead, "the proper course of action [is] for the [second-filed] court to transfer the case" to the first-filed court. *Id.* at 606. It is then the responsibility of the first-filed court to decide "whether the second suit filed must be dismissed, stayed, or transferred and consolidated." *Sutter Corp.*, 125 F.3d at 920.

## III. DISCUSSION

The Court agrees with Maestro that the instant case and the Nevada lawsuit do not substantially overlap. The "core issue" in the instant case, *see Int'l Fid. Ins. Co.*, 665 F.3d at 678, is AFW's alleged non-payment of a Promissory Note. (Orig. Pet., Dkt. 1-1, at 4). The "core issue" in the Complaint filed by AFW in the Nevada action, on the other hand, is whether Maestro breached a contract with AFW and the covenant of good faith and fair dealing by failing to pay for services allegedly rendered by AFW. (Nevada Lawsuit Complaint, Dkt. 13-2, at 3–6). The only similarities between these two cases are that the parties are—in part—the same,[4] and that certain individuals' testimony will be relevant to both cases. But at no point does the Complaint in the Nevada lawsuit allude to the Promissory Note, *see* Dkt. 13-2, and at no point does the Original Petition in the instant case refer to a contract for services between the parties, *see* Dkt. 1-1.

Contrary to AFW's argument, the mere fact that monetary obligations between the two parties are involved in both cases does not mean the cases have the same "core issue." If that were the case, then practically every lawsuit filed involving the same parties would have substantial overlap and be subject to the first-to-file rule—a result that does not follow from the principles underlying the rule. *See Save Power Ltd.*, 121 F.3d at 950 (quoting *W. Gulf Mar. Ass'n*, 751 F.2d at 729) (explaining that the first-to-file rule's purpose is to "avoid the waste of duplication, to avoid rulings

---

[4] In addition to AFW and Maestro, the Nevada case involves Does 1 through 10 and DAS Solutions. (Nevada Lawsuit Complaint, Dkt. 13-2, at 2; Maestro Resp. Supp. to Mot. to Transfer, Dkt. 19, at 2–3).

which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result"). AFW additionally argues that the Promissory Note makes no mention of its purpose, such that evidence regarding Rogers' plans to purchase a high-performance vehicle is irrelevant. (AFW Reply, Dkt. 16, at 3). The Court agrees that the exact purpose of the Promissory Note is not relevant to its first-to-file analysis, but its conclusion is the same—that the contracts at issue in the Nevada lawsuit and the instant lawsuit are in no way intertwined. Thus, the core issues in the two cases are not the same. *See Int'l Fid. Ins. Co.*, 665 F.3d at 678.

Next, "much of the proof adduced" is unlikely to be identical. *See id.* (quoting *Mann Mfg., Inc.*, 439 F.2d at 407). To prevail in the Nevada lawsuit, AFW must put forth proof that it and Maestro entered into a valid and enforceable contract, that AFW substantially performed under the contract, that Maestro breached the contract, and that AFW has suffered damages. The evidence as to these elements is irrelevant to what Maestro must prove here—that Maestro and AFW entered into a *different* valid and enforceable contract, that Maestro substantially performed under the contract, that AFW breached the contract, and that Maestro has suffered damages. Given this disparity of the relevant facts between the two suits, there is little reason to believe that the evidence will substantially overlap. The fact that the two cases will require testimony from similar witnesses does not change this conclusion. The risk of duplicative discovery could be avoided by tailoring the scope of discovery in each case. *See Encore Wire Corp. v. Copperweld Bimetallics, LLC*, No. 4:22-CV-232-SDJ, 2023 WL 123506, at *5 (E.D. Tex. Jan. 6, 2023) ("Although the claims raised some overlapping factual questions and would require producing at least some of the same evidence, the risk of duplicative discovery could be avoided by tailoring the scope of discovery in the new action.").

Finally, a "likelihood of conflict" is non-existent. The District Court for the District of Nevada's ruling on whether Maestro owes AFW money under the contract at issue in that case has no bearing on whether AFW owes Maestro money in this case. Similarly, AFW has not provided a

persuasive explanation as to how the District Court for the District of Nevada could be called upon to make a factual finding relevant to the claims before this Court. It claims: "Potential conflict includes the possibility that the two courts could reach different calculations as to which persons and or entities were parties to the profit-sharing agreement, the terms of the profit-sharing agreement, and the amount owed and/or offsets available." (AFW Reply, Dkt. 16, at 4). But the profit-sharing agreement is not before this Court, meaning this Court will not make any findings as to the profit-sharing agreement. Further, the Court disagrees that AFW's affirmative defense that any award in favor of Maestro in this case must be offset by any award in favor of AFW in the Nevada case risks "competing legal and factual holdings on a key issue central to both lawsuits." (AFW Reply, Dkt. 16, at 1). If the parties are indeed found to owe each other money, judgments from this Court and from the District Court for the District of Nevada can be harmonized by the parties merely following each court's order. Thus, these cases do not substantially overlap, and the first-to-file rule therefore does not apply.[5] The Court will not transfer this case to the District of Nevada.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that AFW's Motion to Transfer, or Alternatively, to Stay, (Dkt. 13), is **DENIED**.

**IT IS FURTHER ORDERED** that AFW's Motion to Abate or Stay Deadlines, (Dkt. 21), is **DENIED AS MOOT**.

**SIGNED** on October 6, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[5] Because the Court has found the first-to-file rule to not apply, it does not reach Maestro's argument that AFW's Nevada lawsuit was an anticipatory filing.